1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   IDOWU O. OGHOGHO,

11            Plaintiff,                          No. CIV S-07-1570 LKK DAD PS

12       v.

13   OPERATING ENGINEERS              FINDINGS AND RECOMMENDATIONS
     LOCAL 3 DISTRICT 80,
14
              Defendant.
15   _____/

16            This matter came before the court on September 19, 2008, for hearing on

17   defendant's motion for summary judgment or, in the alternative, summary adjudication.  Plaintiff

18   Idowu O. Oghogho, proceeding pro se, appeared on his own behalf.  Kenneth C. Absalom, Esq.

19   appeared on behalf of defendant.

20            After hearing argument on defendant's motion, the court granted plaintiff leave to

21   supplement his untimely opposition with a written response to defendant's statement of

22   undisputed facts.  See Local Rule 56-260(b).  The court also granted defendant an opportunity to

23   file a reply to plaintiff's untimely opposition.

24            Upon consideration of all written materials filed by the parties in connection with

25   defendant's motion, the parties' arguments in open court, and the entire file, the undersigned

26   recommends that defendant's motion be granted and this case closed.

BACKGROUND

Plaintiff commenced this action in the Sacramento County Superior Court on June 27, 2007, and filed an amended complaint on July 5, 2007.  Defendant Operating Engineers Local Union No. 3, sued as Operating Engineers Local 3, District 80, was served with the initial complaint and summons on July 3, 2007, and was subsequently served with the amended complaint.

On August 1, 2007, defendant filed an answer to plaintiff's pleadings and removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441 on the grounds that plaintiff has alleged violations of federal statutes (42 U.S.C. § 1983 and Title VII of the Civil Rights Act) and has asserted state law claims that are preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a), because the claims require interpretation of a collective bargaining agreement.[1]

A Status (Pretrial Scheduling) Conference was held on February 8, 2008, and a scheduling order was filed on February 21, 2008.  Defendant's June 5, 2008 motion for extension of discovery deadlines was denied by the assigned district judge on June 12, 2008, and defendant's July 30, 2008 discovery motion was denied by the undersigned as untimely on August 6, 2008.  Discovery closed on August 1, 2008.[2]

STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

/////

[1] Plaintiff has alleged state law claims for breach of contract, wrongful termination, violations of the California Labor Code, and discrimination in violation of the California Fair Employment and Housing Act.

[2] Due to the late filing of plaintiff's opposition to defendant's motion and the further briefing permitted by the court, the dates set for Final Pretrial Conference and Jury Trial have been vacated, to be rescheduled if necessary following disposition of defendant's motion.

2

of law.  Fed. R. Civ. P. 56(c).  See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a

dispositive issue, a summary judgment motion may properly be made in reliance solely on the

'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Celotex Corp., 477

U.S. at 323.  Indeed, summary judgment should be entered, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of

Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607

F.2d 1276, 1280 (9th Cir. 1979).  The opposing party must demonstrate that a fact in contention

is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

1  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the

2  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

3  whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

4  56(e) advisory committee's note on 1963 amendments).

5                                               ANALYSIS

6  I.  Plaintiff's Claims

7              Plaintiff alleges as follows.  He is a member of Operating Engineers Local Union

8  No. 3 and began working for Teichert construction company in June 2006 pursuant to an

9  apprentice agreement.  The apprenticeship was limited to one classification although plaintiff

10  wanted to train in several new classifications.  Plaintiff did not get to work the number of hours

11  he believed he was entitled to work.  Plaintiff complained about lack of hours and hostile work

12  environment, but union officials did not assist him or protect him and even threatened him with

13  disciplinary action.  In August 2006 plaintiff was laid off by Teichert based on lack of work and

14  reduction in force.  Plaintiff's understanding was that he was eligible for rehire.  Later that same

15  month, plaintiff's employment was terminated on the basis of reduction in force, without

16  eligibility for rehire.  Union officials failed to act on plaintiff's behalf and retaliated against him

17  because he is black and from Africa.  Plaintiff pursued administrative remedies through the

18  Department of Fair Employment and Housing and the Equal Employment Opportunity

19  Commission.

20              Plaintiff asserts that his termination was without just cause, breached several state

21  laws, violated provisions of the Operating Engineers Northern California Master Agreement, and

22  constituted disparate treatment in violation of § 1983 and Title VII of the Civil Rights Act of

23  1964.  The causes of action identified in his amended complaint are for breach of contract,

24  emotional and mental distress, financial hardship, unlawful termination, professional negligence,

25  discrimination based on race and national origin, and retaliation.  Plaintiff seeks damages in the

26  amount of $50,000,000.00, interest, and attorney's fees.

4

II.  Discussion of Defendant's Arguments and Evidence

Defendant seeks summary judgment on the grounds that (1) Local 3 is not the proper defendant, (2) plaintiff's claims for breach of the duty of fair representation and breach of contract are barred, and (3) plaintiff cannot prove his claims for discrimination based on race and national origin because his termination was supported by legitimate, nondiscriminatory reasons. As required by the standards applicable to motions for summary judgment, and as set forth more fully infra, defendant has identified portions of the pleadings, materials obtained through discovery, and affidavits that demonstrate the absence of a genuine issue of material fact as to each of plaintiff's stated grounds for relief.

With respect to the argument that Local 3 is not the proper defendant, defendant's evidence establishes the following facts regarding Local 3 and apprenticeship programs available to its members.  Local 3 is a labor organization that exists for the principal purpose of representing its members in collective bargaining with their employers.  Local 3 is a signatory to the Master Agreement for Northern California, which covers union members working for various private contractors doing business in Northern California.  Under the Master Agreement, signatory employers contribute to a trust fund known as the Operating Engineers and Participating Employers, Apprentice and Journeyman Affirmative Action Training Fund.  The Master Agreement establishes a Joint Apprenticeship Committee (JAC), which is a joint labor-management committee.  Signatories to the Master Agreement delegate the administration of all apprenticeship training programs to the JAC, which has full responsibility for educating, training, and disciplining apprentices under standards adopted by the JAC.  The JAC consists of fourteen trustees, of which seven are appointed by Local 3 and seven are appointed by the employer signatories.  The JAC was established in accordance with the provisions of the California Labor Code governing apprenticeship programs.  The JAC is an entity separate from Local 3 and the employer signatories.  The trustees establish an annual budget for the JAC, which must operate its training functions within the parameters of its budget.  The trustees monitor JAC training

5

operations. The JAC sets performance standards for apprentices and adopts rules and regulations governing their conduct. Local 3 has no control over training standards, performance requirements, or the selection and discipline of apprentices, as all of those matters are within the exclusive authority of the JAC. Apprentices are subject to the rules, regulations, and procedures established by the JAC and to the apprenticeship standards established by the JAC and approved by the California Department of Industrial Relations. See Burns Decl.[3] ¶¶ 2-7 & Ex. A; Castillo Decl.[4] ¶¶ 2-4 & Ex. A; Paterson Decl.[5] ¶¶ 2-3 & Ex. A.

Defendant's evidence reflects that plaintiff applied for apprentice training in 2006 pursuant to the Master Agreement for Northern California and, as required by the JAC, entered into apprentice agreements with Teichert as his sponsoring employer and with the JAC. Burns Decl. ¶¶ 3 & 6; Paterson Decl. ¶¶ 1 & 3; Exs. B & C. Local 3 is not a party to its members' apprentice agreements and therefore was not a party to plaintiff's apprenticeship agreement. Burns Decl. ¶ 6; Paterson Decl. ¶ 3 & Ex. C. The apprenticeship application form includes an agreement by the applicant to abide by all rules and regulations applicable to registered

---

[3] Declarant Russ Burns is the Business Manager of Operating Engineers Local Union No. 3 and in that capacity serves as chief executive officer of Local 3. He has held that position since September 2006 and previously served in other elected and appointed positions in Local 3. He is familiar with Local 3's collective bargaining agreements and apprenticeship training programs. He serves as co-chairman of the Operating Engineers and Participating Employers, Apprentice and Journeymen Affirmative Action Training Fund and the JAC. Burns Decl. ¶ 1.

[4] Declarant Tammy Castillo is employed as Director of Apprenticeship for the Joint Apprenticeship Committee for Northern California. She has overall responsibility for the supervision and administration of the day-to-day operations of the JAC and is familiar with the rules and regulations governing the operations of the JAC. Castillo Decl. ¶ 1. Attached to her declaration is a copy of the Apprenticeship Standards of the JAC. Castillo Decl. Ex. A.

[5] Declarant Clara C. Paterson is employed as an Apprentice Coordinator for the Joint Apprenticeship Committee for Northern California. She has been employed in that capacity since December 17, 2001. Her principal assignment is to oversee apprentices whose last names begin with the letters K through Z. She monitors the assignments and performance of those apprentices to make sure they attend the required classes and meetings, and she interacts with individual employers concerning issues that may affect the apprentices working for them. Paterson Decl. ¶ 1. The attachments to her declaration include a copy of the JAC's Rules, Regulations and Procedures. Castillo Decl., Ex. A.

1   apprentices.  Paterson Decl. Ex. B.  The applicable rules provide for hearing procedures and

2   unions, including Local 3, have no role in and no right to participate in the JAC's hearing

3   proceedings.  Burns Decl. ¶ 6.  Local 3 has no authority over the selection of apprentices, cannot

4   recommend that an apprenticeship agreement be cancelled, and cannot intervene in the JAC's

5   determination as to whether an apprenticeship agreement should be terminated.  Id. ¶ 7.

6            Pursuant to the apprentice agreement between plaintiff's sponsoring employer and

7   the JAC in 2006, the employer was required to provide the apprentice with one thousand hours of

8   work over a period of time, not necessarily on consecutive days and only when there was work

9   available for assignment to apprentices.  Paterson Decl. ¶ 3.  On July 25, 2006, Clara Paterson,

10   the JAC apprentice coordinator, visited the job site where plaintiff was performing his

11   apprenticeship.  The foreperson at the job site advised Paterson that she had informed plaintiff

12   that he needed to improve his attitude and performance and that he seemed to become angry too

13   quickly.  Plaintiff approached Paterson while she was at the job site and complained to her that

14   the journeyman overseeing his work was giving him low grades.  Plaintiff stated that he would

15   not sign his time cards if he received low grades.  Paterson cautioned plaintiff that he needed to

16   maintain a good attitude and that he was required to sign his time cards.  Later that same day,

17   Paterson received a call from Jeff Dusenberry, Teichert's superintendent.  Dusenberry told

18   Paterson that he intended to advise plaintiff that he would be terminated if he did not make

19   changes in his performance and attitude within a week.  Paterson prepared an apprentice

20   evaluation report noting the information provided at the job site and by telephone.  Her report

21   indicates that in July plaintiff was graded at the average level in two performance categories and

22   below average in five categories.  In the previous month, he was graded average or below

23   average in all categories.  Paterson sent plaintiff a notice to appear on August 16, 2006 before the

24   JAC subcommittee for violation of Rule 7 of the JAC rules and regulations.  Rule 7, found in the

25   Rules and Regulations and Procedures of the JAC in Section 4.02, requires apprentices to

26   complete the required on-the-job training with a passing grade of not less than "C" in each

1 graded category.  An apprentice who receives grades of less than "C" may be required to appear

2 before the appropriate JAC subcommittee.  Paterson Decl. ¶¶ 4-6 & Exs. A, D, E, G & H.

3          On August 3, 2006, Paterson received a call from plaintiff, who complained that

4 he had been told that he would not be provided with work on Friday, which plaintiff believed

5 was contrary to the employer's agreement to provide him with 1,000 hours of work.  Plaintiff

6 also complained that the employer seemed angry when plaintiff left work to attend court hearings

7 concerning his son.  Paterson explained to plaintiff that the employer was not required to provide

8 him with 1,000 consecutive hours of work and was only required to provide work when work

9 was available for apprentices.  Under the bargaining agreement, the employer is expected to have

10 one apprentice employed for every nine journeymen operating engineers, and journeymen always

11 have priority for work assignments, subject only to the nine-to-one ratio.  At the time of

12 Paterson's visit to plaintiff's job site, there was a downturn in the construction industry private

13 sector generally, and Paterson observed a reduction in the amount of work that Teichert had

14 going on at that particular job site.  Paterson Decl. ¶¶ 3 & 6-7, Ex. I.

15          A few days after her August 3, 2006 conversation with plaintiff, Paterson was

16 notified by Teichert that effective August 3, 2006, plaintiff was laid off because of a reduction in

17 work and because of failure to complete his training with passing grades of not less than a "C" in

18 each category.  Paterson was told that plaintiff would not be eligible for rehire.  Paterson

19 prepared a Termination Notice and a Request for Apprentice Appearance before the JAC on

20 September 20, 2006.  Paterson Decl. ¶ 8 & Ex. J.

21          On August 14, 2006, plaintiff appeared at the offices of Local 3 and complained

22 to John Bonilla, Jr., business agent for Local 3, that Teichert was not giving him enough work.

23 Paterson Decl. ¶ 9.  In a handwritten complaint dated August 14, 2006, plaintiff stated that he

24 had worked only one forty-hour week since he had been sent to the Teichert construction site in

25 Woodland and that, except for that one week, he had worked from one to four days per week.

26 /////

1   Absalom Decl.[6] Ex. D.  Plaintiff stated further that he was not working allegedly due to a "lack of

2   work" although everybody had been working on the last day he worked and when he returned to

3   get his time card on a subsequent day, he saw everybody working and new workers on the crew.

4   Plaintiff's written complaint concluded with his belief that he was sent home for no just cause.

5   Id.  However, the document did not indicate that plaintiff believed he was the subject of

6   discrimination based on race or national origin or that he believed he was the victim of

7   retaliation.  Id.

8          On August 16, 2006, plaintiff appeared before the JAC subcommittee which

9   decided to hold the matter in abeyance pending review of payroll records.  Paterson Decl. ¶ 5.

10  Plaintiff did not appear before the subcommittee on September 20, 2006.  The subcommittee

11  ruled that plaintiff's violations of Rules 7 and 11 would result in termination and recommended

12  that the JAC remove him from the apprenticeship program.  Plaintiff did not request

13  reconsideration, nor did he appeal even though the JAC provides for such procedures.  Paterson

14  Decl. ¶ 9 & Ex. K.

15         Based on this evidence, defendant argues that plaintiff cannot establish that

16  defendant owed plaintiff a legal duty with regard to his apprenticeship, breached the duty, and

17  thereby caused him harm.  Defendant contends that its only connection to the circumstances that

18  gave rise to plaintiff's claims is that it is a signatory to an agreement with Northern California

19  employers engaged in the private construction industry and it contributes to a trust fund that

20  finances an organization to provide training to apprentices who are members of the union.

21  Defendant emphasizes that the JAC operates the apprenticeship program at issue and has

22  exclusive authority over all aspects of the program.  Defendant asserts that the separate legal

23

24         [6]  Kenneth C. Absalom is defendant's counsel.  His declaration dated August 17, 2008,
    indicates that Exhibit E is a copy of a handwritten document dated August 14, 2006, produced by
25  plaintiff in response to defendant's request for production and marked by plaintiff as Exhibit 15.
    Counsel's Exhibit D is a copy of plaintiff's response to defendant's request for production, in
26  which plaintiff describes his Exhibit 15 as "The Complaint I made at the Union hall with the
    business representative/agent Mr. John Bonilla jr."

1  structure of the JAC is not uncommon, conforms with the California Labor Code, and has been

2  recognized as a separate entity by the courts.  In the absence of defendant exercising any control

3  over an apprenticeship program that is a separate entity, defendant urges the court to enter

4  judgment in its favor.

5          The court finds that defendant's evidence in support of its first argument in favor

6  of summary judgment is persuasive.  California Labor Code § 3075 provides that an

7  apprenticeship program may be administered by a joint apprenticeship committee composed of

8  an equal number of employer and employee representatives, and § 3076 provides that the

9  participating organizations may delegate to the committee full authority to establish work

10 processes, wage rates, and working conditions for apprentices and to resolve apprenticeship

11 disputes.  The Ninth Circuit has held that joint apprenticeship and training committees "are

12 entities legally separate and distinct from the specific unions with which they are associated."

13 United States v. Ironworkers Local 86, 443 F.2d 544, 547 (9th Cir. 1971).  Thus, in a Title VII

14 action alleging sex discrimination in the carpentry apprenticeship program in Northern

15 California, the Ninth Circuit ruled that the union locals and employers were not necessary parties

16 to the suit because relief on the plaintiffs' claims could be afforded by injunction against the joint

17 apprenticeship and training committee as an entity, given the committee's power to structure the

18 apprenticeship program in any way it saw fit.  Eldredge v. Carpenters 46 N. Cal. Counties Joint

19 Apprenticeship & Training Comm., 662 F.2d 534, 536-38 (9th Cir. 1981) (Eldredge II); see also

20 Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm., 833 F.2d

21 1334, 1337 (9th Cir. 1987) (Eldredge IV) (holding that the joint apprenticeship and training

22 committee is responsible for decisions it delegates to the employers).  Cf. Berger v. Iron Workers

23 Reinforced Rodmen Local 201, 852 F.2d 619, 620-21 (D.C. Cir. 1988) (holding that the union

24 local, the training program, and the apprenticeship committee were three separate legal entities

25 and the latter two were not jointly liable with Local 201 for its unilateral acts).

26 /////

1        Defendant argues further that if plaintiff's pro se complaint is liberally construed

2   as alleging a cognizable claim for breach of the duty of fair representation, that claim is barred by

3   the statute of limitations.  In support of this argument, defendant cites plaintiff's allegations that

4   defendant refused to bargain collectively and that defendant's agent John Bonilla, Jr.

5   misrepresented facts, refused to let plaintiff file a grievance, and refused to represent plaintiff.

6   Defendant acknowledges that unions have a duty to represent all employees in the bargaining

7   unit fairly, with honesty and in a nondiscriminatory manner, but argues that if there had been a

8   legal duty to represent plaintiff in connection with his training or employment as an apprentice,

9   unions have broad discretion in deciding whether to file a grievance or not and a breach of the

10  duty of fair representation occurs only if the refusal to file a grievance is motivated by bad faith

11  or discriminatory reasons, or the decision is arbitrary.  Defendant asserts that the statute of

12  limitations applicable to claims based on the duty of fair representation is six months, and

13  plaintiff did not file his original complaint in state court until June 27, 2007, more than ten

14  months after the August 14, 2006 date on which plaintiff claims that John Bonilla, Jr. refused to

15  let plaintiff file a grievance and refused to represent plaintiff in connection therewith.

16       Similarly, with respect to plaintiff's allegation that his employer and the

17  apprenticeship committee breached the apprenticeship agreement, defendant argues that even if

18  the proper defendant were before the court, this breach of contract claim would be barred because

19  plaintiff did not exhaust the administrative remedy applicable to the apprenticeship agreement.

20  In this vein. defendant cites California Labor Code §§ 3085 and 3081 which plaintiff himself

21  identifies as providing the statutory basis for his breach of contract claim.  Section 3085 provides

22  that no person shall institute any action for enforcement of any apprentice agreement or any

23  action for damages for the breach of any apprentice agreement unless the person has exhausted

24  all administrative remedies provided by the statutory scheme.  Section 3081 requires that the

25  apprentice agreement provide a hearing procedure to resolve disputes, and the JAC has adopted

26  rules and regulations that accord with the requirement.  Burns Decl. ¶ 6.  Plaintiff was sent a

1    Notice to Appear before the JAC subcommittee on September 20, 2006 but did not appear, and

2    the subcommittee ruled that his termination should stand.  Paterson Decl. ¶¶ 8 & 9, Exs. J & K.

3    Defendant argues that there is no evidence that plaintiff sought review of that decision through

4    the appeal and reconsideration procedures established by the JAC's rules and regulations or that

5    plaintiff appealed to the California Administrator of Apprentices pursuant to § 3085.  Paterson

6    Decl. ¶ 9.

7           Finally, defendant contends that, even if the proper defendant were before the

8    court, plaintiff could not prevail on the merits of his federal claims.  Defendant argues that

9    plaintiff cannot establish a prima facie case under Title VII by producing evidence sufficient to

10   raise an inference of intentional discrimination.  Even if plaintiff were able to do so, the

11   defendant argues it would be able to rebut the inference with evidence of legitimate,

12   nondiscriminatory reasons for plaintiff's termination from the apprenticeship program including:

13   his poor attitude, his failure to perform at a level of "C" or higher in each category in which he

14   was evaluated, and the lack of work.  See Paterson Decl. ¶¶ 3-6, Exs. C, D, E, G & H; Burns

15   Decl. Ex. A.  Defendant asserts that plaintiff cannot show that these nondiscriminatory reasons

16   for the employer's action were a mere pretext for discrimination and there is no evidence of

17   intentional discrimination sufficient to defeat summary judgment even if the proper defendant

18   were before the court.  With respect to plaintiff's § 1983 claims, defendant argues that a

19   cognizable claim under Title VII precludes a § 1983 claim based on the same facts.  Furthermore,

20   defendant asserts that a plaintiff who fails to establish intentional discrimination for purposes of

21   Title VII also fails to establish intentional discrimination for purposes of § 1983.

22           Having considered all of defendant's evidence and arguments, the undersigned

23   finds that defendant has met its initial responsibility in seeking summary judgment and plaintiff

24   has the burden of establishing that a genuine issue as to any material fact actually does exist.

25   /////

26   /////

III.  Discussion of Plaintiff's Arguments and Evidence

        Plaintiff was required to file opposition or a statement of non-opposition to defendant's motion on or before September 5, 2008.  See Local Rule 78-230(b); Status (Pretrial Scheduling) Order filed Feb. 21, 2008, at 2-3.[7]  On September 12, 2008, the date on which defendant's reply would have been due if plaintiff had filed timely opposition, plaintiff filed four documents:  a 25-page response to defendant's motion (Doc. No. 63), a 4-page brief asserting that defendant Local 3 is the proper defendant (Doc. No. 64), a 7-page brief challenging the declarations offered in support of defendant's motion (Doc. No. 65), and a 78-page compilation of exhibits (Doc. No. 62).  Plaintiff's opposition did not include any document in which plaintiff admits or denies each of the facts presented in defendant's statement of undisputed facts, as required by Local Rule 56-260.

        At the hearing of defendant's motion on September 19, 2008, the court granted plaintiff an opportunity to comply with Local Rule 56-260 by filing a written response to defendant's itemized statement of undisputed facts.  In a supplemental opposition filed on September 25, 2008, plaintiff offers a list of admissions and denials.  (Doc. No. 69.)  Although plaintiff was ordered not to offer argument in lieu of or in addition to the citation of evidence supporting each denial, plaintiff has included argument with many of his denials and virtually all of his admissions.  Moreover, the supplemental opposition includes additional exhibits that total 84 pages.

        The undersigned has reviewed plaintiff's denials and the exhibits cited in support of them and finds that they fail to establish the existence of a genuine issue of material fact with regard to defendant's argument that plaintiff has sued the wrong party.  For example, in his first denial, plaintiff denies defendant's Undisputed Material Fact No. 4, by which defendant asserts

---

[7]  The order refers the parties to Local Rule 78-230 regarding motions but states in bold print that "[o]pposition or statement of non-opposition to all motions shall be filed and served not later than 4:30 p.m. fourteen (14) days preceding the hearing date except that opposition served by mail must be served not less than seventeen (17) days preceding the hearing date."

1   that "[t]he Joint Apprenticeship Committee (JAC) is a joint labor-management committee

2   established under collective bargaining agreements and in accordance with California Labor

3   Code governing apprenticeship programs." Plaintiff denies defendant's Undisputed Material

4   Fact No. 4 "because JAC is established within a Labor Organization as same entity which

5   automatically abide by Collective Bargaining agreements and California Labor Code governing

6   apprenticeship programs." Pl.'s Supplemental Opp'n at 6. In support of this confusing denial,

7   plaintiff cites ten exhibits.[8] The undersigned has examined the exhibits and finds that they do not

8   support plaintiff's apparent contention that the JAC is "within" a labor organization or the "same

9   entity" as a labor organization.

10          Like plaintiff's denial of defendant's undisputed fact No. 4, all of plaintiff's

11  denials regarding the nature of the JAC and its relationship to defendant Local 3 are unsupported

12  and lack merit. Many of the documents cited by plaintiff in support of his denials have no

13  apparent relevance, and others support defendant's asserted facts, either directly or indirectly.

14  For example, plaintiff denies defendant's Undisputed Material Fact No. 6, in which defendant

15  states that "[t]he JAC is composed of fourteen (14) members, seven (7) of whom are appointed

16  by labor and seven (7) appointed by management, who are selected from the employer

17  associations which are signatories to the Rules and Regulations and Procedures and other

18  governing documents of the JAC." Plaintiff denies this asserted fact with a citation to his

19  Exhibits 59 and 68. Exhibit 59 describes the composition of the California Apprenticeship

20  Council, a statewide body that sets apprenticeship standards. The composition of that body is

21  irrelevant to the composition of a joint apprenticeship committee. Exhibit 68 is a nine-page

22  document with a revision date of August 1978 concerning the Department of Industrial

23  Relations, Division of Apprenticeship Standards. The document indicates that apprenticeship

24  committees may be joint or unilateral and that joint committees have equal representation from

25  ───────────────

26          [8] Although many of plaintiff's exhibits consist of multiple pages, plaintiff fails to specify
        pages and line numbers when citing those exhibits.

1   labor and from management.  Pl.'s Supplemental Opp'n, Ex. 68 at 3.  This portion of the

2   document plainly supports defendant's Undisputed Material Fact No. 6, and the undersigned

3   finds nothing in plaintiff's Exhibit 68 that establishes a genuine dispute regarding defendant's

4   asserted fact No. 6.  Plaintiff's evidence fails to demonstrate that the JAC is a unit of Local 3

5   rather than a separate entity composed of equal numbers of union and employer representatives,

6   to which the unions and employers have delegated all authority for operating apprenticeship

7   programs that are financed by the unions and the employers.

8           Plaintiff has also attempted to ascribe the actions of the JAC to Local 3 by

9   claiming that employees of the JAC are union employees.  Plaintiff describes Clara Paterson as

10  an "Operating Engineers coordinator/agent" and argues that Tammy Castillo "worked for

11  Operating Engineers Local #3."  However, plaintiff's evidence does not contradict Paterson's

12  declaration under penalty of perjury that she is employed by the JAC as apprentice coordinator or

13  Castillo's declaration under penalty of perjury that she is employed by the JAC as the person

14  responsible for the supervision and administration of the day-to-day operations of the JAC.  As a

15  result, all of plaintiff's arguments concerning alleged improper misconduct by Paterson and

16  Castillo are unavailing and do not defeat defendant's argument that Local 3 is not the proper

17  defendant in this action.

18          On this record, there is not a scintilla of evidence that supports a finding that

19  defendant Local 3 is the proper defendant in this action.  See Addisu v. Fred Meyer, Inc., 198

20  F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or

21  not significantly probative does not present a genuine issue of material fact" precluding summary

22  judgment); see also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  In

23  the absence of any evidence of a disputed issue of material fact regarding the nature of the JAC

24  and its authority over apprenticeship matters, the undersigned finds that defendant Local 3 is

25  entitled to summary judgment on its argument that plaintiff has named the wrong defendant.

26  /////

1    In light of the conclusion reached above, the court need not consider the

2    remaining arguments advanced by defendant in support of its motion for summary judgment.

3    Nonetheless, the undersigned also finds that plaintiff has also failed to refute defendant's

4    arguments concerning the statute of limitations bar on plaintiff's claim of breach of the duty of

5    fair representation, the exhaustion bar on plaintiff's breach of contract claim, the existence of

6    evidence that would rebut plaintiff's Title VII claim of intentional discrimination, and the

7    preclusive effect of the Title VII claim with respect to any § 1983 claim.  Plaintiff has not

8    produced any evidence that creates a disputed issue of material fact with respect to any of these

9    issues, and defendant is entitled to summary judgment on these grounds as well.

10                                    CONCLUSION

11    Summary judgment should be entered in favor of defendant on all claims because,

12    after adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the

13    existence of any disputed issue of fact regarding elements essential to his claims and on which he

14    would bear the burden of proof at trial.

15    Accordingly, IT IS HEREBY RECOMMENDED that:

16    1.  Defendant's August 18, 2008 motion for summary judgment (Doc. No. 54) be

17    granted in full; and

18    2.  This action be dismissed.

19    These findings and recommendations are submitted to the United States District

20    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **twenty**

21    **(20)** days after being served with these findings and recommendations, any party may serve and

22    file written objections with the court.  A document containing objections should be titled

23    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

24    shall be served and filed within ten (10) days after service of the objections.  The parties are

25    cautioned that failure to file objections within the specified time may, under certain

26    /////

1 circumstances, waive the right to appeal the District Court's order.  <u>See</u> <u>Martinez v. Ylst</u>, 951

2 F.2d 1153 (9th Cir. 1991).

3 DATED: January 28, 2009.

4

5 _____

6 DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

7 DAD:kw
ddad1\orders.pro se\oghogho1570.msj.f&r

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26